IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-03182-PAB

RENEE LISA CASTILLO,

      Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

      Defendant.
_____

**ORDER**
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Renee Lisa Castillo on December 27, 2016. Plaintiff seeks review of the final decision of defendant Nancy A. Berryhill (the "Commissioner") denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33, and supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]

**I. BACKGROUND**

On March 31, 2015, plaintiff applied for a period of disability and disability insurance benefits under Title II of the Act and supplemental security income under Title XVI of the Act. R. at 17. Plaintiff alleged that she had been disabled since June 1, 2013. *Id*. After an initial administrative denial of her claim, plaintiff received a hearing

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

before an Administrative Law Judge ("ALJ") on March 30, 2016. *Id*. On June 10, 2016, the ALJ issued a decision denying plaintiff's claim. R. at 20. The ALJ found that plaintiff had the following severe impairments: "fibromyalgia, lumbar degenerative disc disease with post laminectomy syndrome and evidence of radiculopathy, mild cervical degenerative disc disease, mild degenerative joint disease of the left AC joint, depression, bipolar disorder, anxiety, impulse control disorder, generalized anxiety disorder, panic disorder with agoraphobia, and posttraumatic stress disorder (PTSD)." R. at 19-20. The ALJ concluded that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, R. at 21, and found that plaintiff had the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), meaning the claimant would be limited to occasional lifting and carrying of 10 pounds, frequently lifting and carrying less than 10 pounds, standing and/or walking for no more than 2 hours in an 8-hour workday, and sitting for 6 hours in an 8-hour workday. However, she can never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. She can occasionally reach overhead bilaterally and can only frequently reach in all other directions with the non-dominant left upper extremity. She should avoid all exposure to hazards. She can understand, remember, and carry out no more than simple tasks and instructions. She should not be subject to a production rate pace, such as assembly line work, and she cannot perform team or tandem work.

R. at 23. Plaintiff has past relevant work as a receptionist. R. at 34. Based upon the RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff is not capable of performing her past relevant work but is capable of performing jobs that exist in significant numbers in the national economy, including callout operator, document preparer, and hand painter/stainer. R. at 34-35.

On October 31, 2016, the Appeals Council denied plaintiff's request for review

of the ALJ's denial of her claim. R. at 1. Given the Appeals Council's denial, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## B. The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

Plaintiff argues that the ALJ erred because he did not state valid reasons for rejecting the mental health-related limitations stated in the opinions of Richard Madsen, Ph.D. and MaryAnn Wharry, Psy.D. Docket No. 16 at 3. The specific limitations that plaintiff argues should have been included in her RFC are Dr. Madsen's opinion that plaintiff would be off task more than thirty percent of the work week and would miss three or more days of work per month. *Id*. at 10. Plaintiff also argues that the ALJ should have incorporated moderate limitations in her ability to interact appropriately with the public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers without distracting them, and respond appropriately to changes in work setting that were found by both Dr. Madsen and Dr. Wharry. *Id*. at 12. Defendant responds that the reasons given by the ALJ support his RFC determination and provide good reasons for rejecting the limitations of Drs. Madsen and Wharry. Docket No. 17 at 9-16.

5

Before weighing the medical opinions, the ALJ extensively discussed plaintiff's mental health conditions and activities of daily living over the preceding years, explaining why he determined that, although plaintiff's medical records show her conditions "would cause some functional limitations, they are less than disabling in severity." R. at 27. Near plaintiff's alleged 2013 onset date, the ALJ noted inconsistences between plaintiff's examinations and her testimony about her mental health symptoms. *Id*. The ALJ explained that plaintiff had significant social activities of daily living and her reported anxiety and depression were related, at least in part, to plaintiff's failure to take her medication and temporary difficulties rather than persistent underlying conditions. R. at 27-28.[2] The ALJ noted that these circumstance continued into 2015, when plaintiff "reported getting out more, socializing or going to the library," and "attending a weekly relapse prevention group, which she found to be helpful." R. at

---

[2] The ALJ found, and plaintiff does not dispute, that

> In January of 2014, the claimant reported improved mood, no depression, and anxiety at a level of two out of ten (Ex. B5F/57). She reported staying busy by visiting people and going to the library, as well as walking two miles almost daily (*Id*.). She also reported attending church every Sunday and that she met someone she was interested in (Ex. B5F/60). Although the claimant reported she was largely depressed and worried in March of 2014, she was also facing an upcoming hearing for criminal charges and a potential jail sentence (Ex. B5F/53-54; B9F/151). The following month she reported increased depression, but also noted she had run out of her medications (Ex. B5F/53). In June of 2014, the claimant's mental status examination was normal, but for depressed and anxious mood, somewhat tearful at times (Ex. B5F/50). However, the claimant reported losing an Aunt, and problems with her family that resulted in taking out a restraining order (Ex. B5F/49, 51-53). The claimant also admitted that she was not taking her Buspar for anxiety due to headaches (*Id*.).

R. at 27-28.

28. Plaintiff reported that "her anxiety was controlled with [the medication] Buspar, and her depression was better." *Id*.[3] In 2016, plaintiff continued to report, at most, moderate depression and anxiety, which the ALJ found was "[i]nconsistent with her testimony of worsening depression and anxiety since October of 2015." R. at 29. In addition to plaintiff's medical history and activities of daily living, the ALJ also discussed other evidence that he found "call[ed] into question the extent of [plaintiff's] alleged symptoms." R. at 31. In particular, plaintiff "was fired from her last job after she was caught forging prescriptions rather than because of her conditions or other issues" and, "in July 2015, her provider noted that she was more concerned about obtaining disability benefits than she was about discussing her mental health symptoms as she was doing well on her current medications." R. at 31.

The ALJ gave "very little weight to [Dr. Madsen's] opinion and the limitations assigned therein," finding that it is "not consistent with the longitudinal record, is overly vague in terms of the limitations assigned, and based almost exclusively on the claimant's subjective complaints, which were largely inconsistent with treatment notes

---

[3] The ALJ found, and plaintiff does not dispute, that plaintiff's

> mental status examinations were grossly normal with mood mildly anxious and depressed, but no panic attacks reported (Ex. B5F/2-5, 7; B21F/21). For example, in March of 2015, the claimant reported that she was OK, and that her psych meds were good, with the only side effect of nausea (Ex. B5F/2). . . . While she complained of little bouts of depression, she wondered if that was due to just having had surgery (Ex. B5F/2). . . . In July of 2015, notwithstanding depressed mood, the claimant had normal mental status examination except for distractibility, and declined a medication dosage increase for residual symptoms (*Id*.).

R. at 28.

at Spanish Peaks." R. at 32. The ALJ noted, in particular, that "Dr. Madsen's evaluation in February 2016 seemingly contains a number of newly subjective allegations" and it "was a representative-referred evaluation for the sole purpose of generating evidence in support of her applications, which is somewhat questionable given the lengthy longitudinal record provided by [her established mental health provider] Spanish Peaks." R. at 31. The ALJ also found that Dr. Madsen only examined plaintiff once and his opinion largely based his limitations on plaintiff's subjective complaints. R. at 32.

With respect to Dr. Wharry, the ALJ gave her opinion "partial weight" and found it supported "in terms of finding task complexity limitations and some social restriction, but given its vagueness, it is not entitled to greater weight." R. at 31-32. As support for his conclusion that the social restrictions were unwarranted, the ALJ noted plaintiff's "numerous activities of daily living," including that "she is able to go to the library, socializes frequently, and has not had any significant issues with her providers." R. at 31.

Plaintiff's argument that the ALJ improperly weighed the opinion evidence in this case boils down to a request that the Court reweigh the relevant evidence. Plaintiff acknowledges that "Dr. Madsen's opinion is not consistent with some things in the record," but argues this "does not mean Dr. Madsen's opinion is wrong" and claims that, instead, "the other evidence may be wrong." Docket No. 16 at 12 (emphasis removed). However, the Court's task is not to determine whether there is evidence supporting plaintiff's claims, but rather to determine whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Angel*, 329 F.3d at 1209; *Bowman v.*

8

*Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) ("In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." (internal quotation marks omitted)). Although plaintiff argues that it was improper for the ALJ to reject Dr. Madsen's opinion on the basis that "it was prepared at counsel's request for purposes of the hearing," Docket No. 16 at 11; *see, e.g., Quintero v. Colvin*, 567 F. App'x 616, 620 (10th Cir. 2014) (unpublished) (finding the fact that a opinion was "prepared at counsel's request for purposes of the hearing . . ., without more, does not justify rejection of a medical opinion"), the relevant caselaw simply provides that this is not a sufficient basis on its own to reject a medical opinion, not that it does not support the rejection of a medical opinion in combination with other evidence and reasoning.

The Court finds that the ALJ's determination to reject limitations in Dr. Madsen's opinion is supported by substantial evidence. The ALJ noted Dr. Madsen's limited contact with plaintiff, which is a valid basis for questioning the reliability of his opinions. *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) ("[F]indings of a nontreating physician based upon limited contact and examination are of suspect reliability."). Further casting doubt on the reliability of the opinions derived from such limited contact, the ALJ noted that Dr. Madsen's report mentioned new subjective complaints that are not found in plaintiff's extended treatment records from Spanish Peaks. R. at 31.[4]

---

[4] As examples of such new, subjective complaints, the ALJ noted:

> The claimant reported that she could not stand being around people, as she has bad anxiety and panic (Ex. B25F/l). She also reported [contrary to testimony she drove short distances] that she does not drive (Ex. B25F/4). Contrary to previous reports to her therapist that she is mostly just depressed in the morning, she reported depression all of the time, from the time she wakes up until she goes to bed (Ex. B9F/3, 95; B25F/l).

9

Plaintiff does not dispute this finding or provide any explanation for why it does not amount to an inconsistency supporting the ALJ's treatment of Dr. Madsen's opinion. *See* Docket No. 16 at 11-12.

With respect to plaintiff's argument that the ALJ improperly excluded moderate limitations found by both Drs. Madsen and Wharry without supporting medical evidence, the Court finds these arguments unpersuasive. The ALJ's extensive discussion of plaintiff's mental health records and activities of daily living over the period after her alleged onset date points out numerous reasons for believing that plaintiff was not limited to the degree reflected in Drs. Madsen and Wharry's opinions, such as plaintiff's anxiety and depression being controlled by medication and plaintiff's reports of socializing and getting along well with others. R. at 27-29. Further, as the ALJ noted, plaintiff lost her previous employment due to misconduct, rather than an inability to interact appropriately with others or deal with changes in her workplace conditions. R. at 31; *see also* 20 C.F.R. § 416.945(a)(1) (The ALJ's RFC determination must be based on "all the relevant evidence in [plaintiff's] case record."). Thus, contrary to plaintiff's argument, the ALJ did not improperly discount uncontradicted medical testimony, but rather pointed to evidence supporting his RFC finding throughout the record. As both plaintiff and defendant acknowledge, the record in this case is mixed. *See* Docket No. 16 at 12; Docket No. 17 at 9. The Court finds that the ALJ relied on

---

> Also inconsistent with treatment notes, the claimant reported a history of auditory hallucinations at night (Ex. B5F/3, 7, 30, 35, 39, 43, 50, 68, 72; B9F/4; B21F/2, 11; B25F/2).

R. at 29.

substantial evidence supporting his decision to omit certain limitations from plaintiff's RFC and gave good reasons for doing so.  Accordingly, the Court will affirm the ALJ's decision.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is **AFFIRMED**.


DATED September 20, 2018.

BY THE COURT:


s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge